

**SO ORDERED.**

**SIGNED this 24 day of July, 2007.**

_____
A. Thomas Small
United States Bankruptcy Judge

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## FAYETTEVILLE DIVISION

IN RE:                                              CASE NO.

NATIONAL GAS DISTRIBUTORS, LLC                      06-00166-8-ATS

     DEBTOR


RICHARD M. HUTSON, II, Trustee for National
Gas Distributors, LLC f/k/a Paul Lawing, LLC
                                                    ADVERSARY PROCEEDING NO.
     Plaintiff
                                                    S-06-00031-8-AP
     v.


FIRST-CITIZENS BANK & TRUST COMPANY,
CHATHAM INVESTMENT FUND QP II, LLC,
CHATHAM INVESTMENT FUND II, LLC,
BRANCH BANKING & TRUST COMPANY, and
INVISTA S.a.r.l.

     Defendants.

### ORDER ALLOWING IN PART AND DENYING IN PART
### VARIOUS MOTIONS FOR SUMMARY JUDGMENT

The matters before the court are the motion filed by Branch Banking & Trust Company ("BB&T")

for summary judgment; the motions filed by Richard M. Hutson, II, trustee for the chapter 11 debtor

National Gas Distributors, LLC, for partial summary judgment against INVISTA, S.a.r.l. ("Invista"), First-Citizens Bank & Trust Company ("First Citizens"), Chatham Investment Fund QP II, LLC, and Chatham Investment Fund II, LLC (collectively, "Chatham"); and the motion filed by First Citizens for partial summary judgment.  A hearing took place in Raleigh, North Carolina on May 10, 2007.

### JURISDICTION

This bankruptcy court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984.  This is a "core proceeding" within the meaning of 28 U.S.C. §§ 157(b)(2)(C), (K) and (O), which this court may hear and determine.

### BACKGROUND

National Gas Distributors, LLC ("National Gas") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on January 20, 2006, and  Richard M. Hutson, II was appointed chapter 11 trustee.  BB&T, Invista, First Citizens and Chatham have competing claims against assets of the debtor's estate, and the trustee brought this adversary proceeding to determine the extent, validity, and priority of those claims.

National Gas was in the business of purchasing and distributing natural gas, propane and other energy commodities in North Carolina, South Carolina, and Tennessee.  Invista is a manufacturer that purchased natural gas from National Gas and was the debtor's largest customer.  First Citizens was one of National Gas's largest secured lenders and has a first lien on the debtor's accounts receivable.  Chatham was the largest secured lender to National Gas and has a lien on the debtor's accounts receivable that is

2

inferior to the lien held by First Citizens.  BB&T is a creditor of National Gas and is the depository bank for three of the debtor's bank accounts that figure prominently in this adversary proceeding.

The debtor's three bank accounts with BB&T had the following balances on the date of the filing of the debtor's petition:

| Account | Balance |
|---------|---------|
| 9153 | $550,605.61 |
| 7929 | $114,841.23 |
| Control | $850,648.56 |

**BB&T's Claim**

BB&T has a claim of $638,250 plus interest, arising from the issuance of a $600,000 letter of credit and a $38,250 wire transfer.  No one contests BB&T's right to setoff, but the trustee, First Citizens, Chatham, and Invista each contend that the doctrine of  marshaling should be applied to BB&T's setoff. Of course, each party wants the setoff marshaled to its individual advantage.

BB&T does not care which funds are setoff, as long as it is paid in full.  BB&T's motion for summary judgment will be granted, but the doctrine of marshaling will be applied and the setoff must be made consistent with the terms of this order.

Before determining how the setoff should be marshaled, the court must first address Invista's assertion that it is entitled to a constructive trust in one of the BB&T accounts, along with the trustee's motion for summary judgment against Invista.

**Invista's Entitlement to a Constructive Trust in the BB&T Bank Accounts**

Invista's claim for a constructive trust is based on its contention that the debtor fraudulently procured a prepayment for natural gas that the debtor did not, and at the time of the prepayment knew it could not, deliver.  The trustee contends that he is entitled to summary judgment because there are no disputed material facts and because the undisputed facts do not support the imposition of a constructive trust in favor of  Invista in any of the debtor's bank accounts with BB&T.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).  In making this determination, conflicts are resolved by viewing all facts and inferences to be drawn from the facts in the light most favorable to the non-moving party.  United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962) (per curiam).  Summary judgment is not a "disfavored procedural shortcut," but an important mechanism for filtering out "claims and defenses [that] have no factual basis." Celotex, 477 U.S. at 327, 106 S. Ct. at 2555.  "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323, 106 S. Ct. at 2552.  Summary judgment should not be granted "unless the moving party has established his right to a judgment with such clarity as to leave no room for controversy." Portis v.  Folk Constr. Co., Inc., 694 F.2d 520, 522 (8th Cir. 1982) (internal quotations omitted).

4

The parties agree that North Carolina law controls whether a constructive trust should be imposed. The leading case on this issue is <u>Sara Lee Corp. v. Carter</u>, 351 N.C. 27, 519 S.E.2d 308 (1999), in which the North Carolina Supreme Court stated that

> [a] constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee. . . . Courts of equity will impose a constructive trust to prevent the unjust enrichment of the holder of the legal title to property acquired through a breach of duty, fraud, or other circumstances which make it inequitable for him to retain it against the claim of the beneficiary of the constructive trust. . . . [A] constructive trust ordinarily arises out of the existence of fraud, actual or presumptive–usually involving the violation of a confidential or fiduciary relation–in view of which equity transfers the beneficial title to some person other than the holder of the legal title.

351 N.C. at 34-35, 519 S.E. 2d at 313 (internal quotations and citations omitted).

Invista maintains that it was fraudulently induced by the debtor to prepay for natural gas that the debtor did not intend to deliver. It is not disputed that $238,103 of the prepayment can be traced to National Gas' BB&T account #9153. Invista claims a constructive trust for that amount, in that account.

The circumstances surrounding Invista's prepayments to National Gas are not in dispute. Each month, National Gas submitted a bid to Invista, and if the bid was accepted, Invista purchased its natural gas requirements from National Gas for the next month. Prior to October 2005, Invista paid for the natural gas in arrears, but beginning in October, National Gas requested payment in advance. Invista accepted the bid from National Gas for October 2005 and made a prepayment on September 28, 2005, of $2,000,000 and another prepayment of $2,000,000 on October 10. Invista's actual gas usage for October resulted in a charge of $4,346,577.20, and Invista paid National Gas the additional $346,577.20 on November 17, 2005.

5

The bid by National Gas for Invista's natural gas requirements for November 2005 was not accepted, but Invista did accept the National Gas bid for December. The bid required two pre-payments of $2,200,000 each, one on November 30 and one on December 16. The prepayments were received by National Gas on November 28 and on December 12.

According to Invista, there are a number of suspicious circumstances involving the second prepayment that support its contention that the prepayment was procured by the debtor's fraud. The invoice for the second prepayment requested payment three days earlier than required by the bid, at a time when National Gas knew that it would have difficulty meeting Invista's requirements. Specifically, National Gas had not "nominated" or requested natural gas from its supplier Piedmont Natural Gas. Furthermore, Piedmont Natural Gas was threatening to discontinue National Gas' use of the Piedmont pipeline and, in fact, National Gas' authority to use the pipeline was revoked on December 9. Additionally, the manner in which National Gas dealt with Invista in December was significantly different that the manner in which it had previously dealt with Invista. Typically, National Gas discussed Invista's natural gas needs with Invista's energy source group. However, in December, National Gas bypassed that group, and sent its invoices directly to Invista's accounting department. If the energy source group had been consulted, an analysis of Invista's need for natural gas would have shown that the second prepayment was not needed. As a result of the prepayments, Invista overpaid for its gas by $3,787,211. It seeks a constructive trust on the overpayment in the amount of $238,103.00, which is the amount that can be traced to National Gas' BB&T account #9153.

Invista also maintains that the debtor's use of the second prepayment proceeds provides evidence of National Gas' fraud. Instead of refunding the proceeds to Invista when National Gas learned that its

6

authority to use the Piedmont pipeline had been revoked, National Gas deposited the proceeds in an investment account, then transferred those funds back to its BB&T account. From that account, National Gas paid in full its outstanding notes to BB&T on which the debtor's principal and his wife were personally liable and for which the principal's wife's personal assets were pledged.[1]

The trustee contends that these facts do not support a constructive trust, and also that in any event, no constructive trust should be imposed because Invista can file a proof of claim in this case. A proof of claim is an adequate remedy at law, the trustee argues, which precludes the imposition of an equitable constructive trust.

The trustee maintains that there was no fraud because National Gas was trying diligently to work out its problems with Piedmont Natural Gas, it had no knowledge that its rights to use the pipeline would be terminated, and it made substantial efforts to restore its rights thereafter. The court notes that these arguments are somewhat undercut by the trustee's numerous assertions throughout this chapter 11 case and in various adversary proceedings brought by the trustee that the debtor acted fraudulently in other transactions.

The court concludes that there are several disputed material facts relevant to Invista's claim that it is entitled to a constructive trust in the amount of $238,103 in the debtor's BB&T account #9153. Furthermore, the court disagrees with the trustee that Invista has an adequate remedy at law. Invista has

---

[1]The court previously found that those transfers were not made in the ordinary course of the debtor's business and the transfers were recovered by the trustee from BB&T as preferential transfers. Hutson v. Branch Banking & Trust Co. (In re National Gas Distributors, LLC), 346 B.R. 394 (Bankr. E.D.N.C. 2006).

filed a proof of claim, but participating in the distribution of assets in an insolvent chapter 11 case is not a sufficiently adequate remedy that would preclude Invista's claim for a constructive trust.

Accordingly, the trustee's motion for summary judgment with respect to Invista's claim to a constructive trust in the amount of $238,103 in the debtor's BB&T account #9153 will be denied.

**Marshaling of Setoff Against BB&T Accounts**

All parties agree that the doctrine of marshaling applies, but after that, opinions diverge, because each party naturally favors an application that maximizes its recovery.   Marshaling is an equitable doctrine that "rests upon the principle that a creditor having two funds to satisfy his debt may not, by his application of them to his demand, defeat another creditor, who may resort to only one of the funds."  Sowell v. Federal Reserve Bank, 268 U.S. 449, 457, 45 S. Ct. 528, 530 (1925).  "The right of a junior lien creditor to have the debtors' assets marshaled is not a lien, or a vested interest, but only an equity." In re Mills, 40 B.R. 72, 75 (Bankr. E.D.N.C. 1984).

First Citizens has a claim of $15,294,677, which is secured by a lien on debtor's accounts receivable, and the proceeds of the accounts receivable.  The trustee concedes that First Citizens' security interest is a valid, properly perfected first lien on the debtor's accounts receivable and proceeds and also agrees that some of the funds in the debtor's bank accounts with BB&T are traceable to First Citizens' collateral.

Chatham has a claim in the amount of $17,000,000, which is also secured by a lien on the debtor's accounts receivable, but Chatham acknowledges that its lien on accounts receivable is inferior to First Citizen's lien.  It is undisputed that the value of the accounts receivable is less than the amount of First

Citizen's prior lien and, consequently, Chatham's claim is essentially an unsecured claim.[2] Chatham also has asserted a lien on the debtor's deposit accounts, but for the reasons stated below the lien is not perfected and the trustee is entitled to summary judgment on that issue.

The debtor's bank accounts with BB&T include the following proceeds from First Citizens' collateral:

| Account | Balance | Amount Traceable to AR |
|---------|---------|------------------------|
| 9153 | $550,606 | $550,606 |
| 7927 | $114,841 | $75,514 |
| Control | $850,649 | $500,240 |

First Citizens maintains that BB&T's setoff should be marshaled to preserve First Citizens' lien in the proceeds of its collateral. According to First Citizens, BB&T's setoff should be exercised against those funds that are not traceable to First Citizens' accounts receivable proceeds.

The trustee agrees that marshaling should be imposed to protect the rights of First Citizens, but argues that the rights of the trustee with respect to the bank account balances that are not traceable to First Citizens' collateral should also be protected.

Invista, of course, contends that it also is entitled to a constructive trust, in the amount of $238,103 in account #9153, but otherwise agrees, as does Chatham, that the trustee's rights with respect to the fund that are not traced to First Citizens' collateral should be protected.

_____

[2]On the petition date the debtor had approximately $6,200,000 in accounts receivable. The trustee collected approximately $1,500,000 of the accounts receivable as of December 31, 2006.

9

It is not disputed that of the $1,516,095 in the three bank accounts, $389,735 is not traceable to First Citizens' collateral.  A tracing report[3] that has been accepted by the parties shows the following breakdown:

| BB&T Account Funds Remaining | | Amount Traceable to Accounts Receivable | Amount Not Traceable to Accounts Receivable |
|---|---|---|---|
| 9153 | $550,606 | $550,606 | $0 |
| 7927 | $114,841 | $75,514 | $39,327 |
| Control | $850,649 | $500,240 | $350,409 |

First Citizens contends that the setoff should be applied as follows:

| BB&T Account Funds Remaining | | To BB&T | To First Citizens |
|---|---|---|---|
| 9153 | $550,606 | $0 | $550,606 |
| 7927 | $114,841 | $39,327 | $75,514 |
| Control | $850,649 | $598,923 | $251,726 |
| TOTAL | $1,516,095 | $638,250 | $877,846 |

The trustee's proposal for marshaling the setoff is as follows:

| BB&T Account | | First Citizens (traceable to AR) | Trustee (not traceable to AR) | Total |
|---|---|---|---|---|
| 9153 | | $550,606 | $0 | $550,606 |
| 7927 | | $75,514 | $39,327 | $114,841 |
| Control | | $500,240 | $350,409 | $850,649 |
| | Total | $1,126,360 | $389,735 | $1,516,095 |

---

[3]The tracing report was prepared by Elizabeth C. Berry, CPA, PLLC, and was filed on November 28, 2006 (AP Docket #29).

| | | | |
|---|---|---|---|
| Percentage of Total | 74.29% | 25.71% | 100% |
| Share of BB&T Setoff | $474,156 | $164,094 | $638,250 |
| Net Distribution | $652,204 | $225,641 | $877,845 |

Trustee's Mem. in Resp. to BB&T's Mot. for Summ. J., Ex. A.

The trustee maintains that he has the rights of a hypothetical lien creditor and that his rights to the funds that are not traceable to funds subject to First Citizens' lien are on a par with the rights of First Citizens with respect to the funds that *can* be traced to its collateral. The trustee argues that under North Carolina law, marshaling is subject to the "English Rule" of proportionate sharing among subordinate lienholders. Hood v. Macclesfield Co., 209 N.C. 277, 183 S.E. 403 (1936). The court in Hood noted that pursuant to the English Rule, marshaling would not be applied in favor of a single junior mortgagee where to do so would prejudice another junior mortgagee. Under the English Rule, marshaling requires that the junior interests be dealt with on a pro rata basis.

First Citizens disagrees that the English Rule applies to the facts of this case because First Citizens holds a security interest that is, under North Carolina law, superior to the trustee's rights as a hypothetical lienholder. N.C. Gen. Stat. §§ 25-9-102(52), -317(a)(2)(A), -323 (Comment 4); see also In re Robert E. Derecktor of R.I., Inc., 150 B.R. 296, 300 (Bankr. D.R.I. 1993) ( "[T]he caveat against causing harm or prejudice to others applies only to parties having equity *equal* to the party seeking to invoke marshaling.").

But, whether or not the interests of First Citizens and the trustee are on equal footing, the rights of unsecured creditors must evaluated. In re Mills, 40 B.R. 72, 75 (Bankr. E.D.N.C. 1984), Judge Moore of this court, who in that case denied marshaling based on an untimely marshaling request, observed that

11

"in a bankruptcy proceeding, the debtor is insolvent and the rights of unsecured creditors must also be considered" when marshaling is requested.  The court has considered the rights of the trustee and of the unsecured creditors and concludes that the equities in this case do not compel application of the English Rule.  Marshaling is an equitable doctrine, and the equities favor marshaling as proposed by First Citizens.  The trustee in this case has brought a number of adversary proceedings to recover preferential and fraudulent transfers and First Citizens has claimed an interest in those recoveries.  For the reasons stated below, the court has determined that First Citizens is not entitled to the recoveries ensuing from the adversary proceedings.  The fact that summary judgment will be granted in favor of the trustee on that issue and that those recoveries will benefit unsecured creditors are factors that influenced the court's decision not to use the pro rata English Rule in deciding how the setoff is to be marshaled.   Accordingly, BB&T is to setoff the funds as follows:

| BB&T Account Funds Remaining | | To BB&T | To First Citizens |
|---|---|---|---|
| 9153 | $550,606 | $0 | $550,606 |
| 7927 | $114,841 | $39,327 | $75,514 |
| Control | $850,649 | $598,923 | $251,726 |
| TOTAL | $1,516,095 | $638,250 | $877,846 |

Of course, the distribution to First Citizens from account #9153 depends upon whether Invista is entitled to a constructive trust on those funds.  Accordingly, pending a trial on that issue, $238,103 must be held in trust by the trustee.

12

**Chatham's Claimed Liens Against Deposit Accounts and Accounts Receivable**

Finally, as to the claims against the accounts, Chatham asserts a claim in the amount of $17,000,000, secured by a first lien on deposit accounts and a second lien on accounts receivable and proceeds thereof. The trustee contends that the first lien on deposit accounts is not properly perfected and is thus subordinate to the trustee's hypothetical judgment lien. A security interest in a deposit account may be perfected by a creditor in one of three ways: (1) by being the depository bank, (2) by executing a written control agreement with the debtor and the depository bank, or (3) by holding the account in the creditor's name. N.C. Gen. Stat. §§ 25-9-104, -310, -312, -314 (2003). Chatham has not perfected its security interest by any of these means, and while it did file a financing statement, that alone is not sufficient to perfect an interest in a deposit account. N.C. Gen. Stat. § 25-9-104. Chatham does not appear to dispute the trustee's contention that the lien on deposit accounts is unperfected, and thus the trustee's interest in the accounts has priority over Chatham's interest. Summary judgment will be entered in favor of the trustee on this issue.

**Rights to the Recoveries Ensuing from the Trustee's Adversary Proceedings to Avoid Preferential and Fraudulent Transfers**

The trustee has filed a number of adversary proceedings to recover preferential transfers pursuant to §§ 547 and 550 of the Bankruptcy Code. These proceedings include a preference action against BB&T in which the trustee recovered $3,263,516 transferred from account #9153 to pay the balances of two notes; a preference action against Piedmont Natural Gas in which the trustee recovered $900,000 for transfers made from account #9153 to pay for gas delivered by Piedmont to the debtor's customers; and a preference action against the principals of the debtor, in which the trustee seeks to avoid and recover a

transfer in the amount of $3,015,916.67 made from account #9153 to BB&T for the benefit of the principals.

The trustee has also filed a number of adversary proceedings to recover fraudulent transfers pursuant to §§ 548 and 550. These proceedings include actions against customers of the debtor to avoid transfers of natural gas for less than fair market value, resulting in net losses to the estate in the amount of $17 million; an action against principals of the debtor for transfers from the BB&T accounts in excess of $4 million that exceeded the reasonably equivalent value of services or other consideration provided to the debtor; a fraudulent transfer action seeking to avoid and recover from Triangle Energy Management transfers from the BB&T accounts totaling $965,000, which exceeded the reasonably equivalent value of services or other consideration provided to the debtor; and a fraudulent transfer action seeking to avoid from 1019 Hay Street, LLC and other defendants transfers from the BB&T accounts totaling approximately $1.123 million, which also exceeded the reasonably equivalent value of services or other consideration provided to the debtor.

First Citizens and Chatham

First Citizens contends that its first priority security interest in accounts receivable and proceeds attaches to the recoveries in these adversary proceedings. Alternatively, it contends that the recoveries should be impressed with an equitable or constructive trust in its favor. First Citizens maintains that it is entitled the trustee's recoveries if it can show that the recovered funds are identifiable proceeds of its collateral and that it has an independent claim outside of bankruptcy against the avoidance action defendants. Similarly, Chatham claims a lien on accounts receivable and proceeds and also contends that a constructive trust should be imposed upon the recoveries in its favor.

14

The trustee disagrees that First Citizens and Chatham have an interest in the avoidance action recoveries either as proceeds of accounts receivable or under a constructive trust theory, even if they can show the funds are traceable and that they have a right of action against the avoidance action defendants outside of bankruptcy.

Collier on Bankruptcy supports the trustee's position. On these points, Collier gives the following commentary:

> Once bankruptcy ensues, however, since all recoveries under the avoiding powers are property of the estate, administered almost exclusively by the trustee for the benefit of the estate as a whole rather than for any creditor individually, it is difficult to see how such recoveries can be other than "after-acquired property" within the meaning of section 552(a), rather than proceeds of prepetition collateral under section 552(b)(1). This is true for fraudulent transfers as well as preferences, and no persuasive distinction seems possible along these lines. Prebankruptcy state law preferences exist, and may be asserted postbankruptcy under section 544(b) of the Code. And the assertion by a trustee of state fraudulent transfer law under section 544(b) allows for an expanded recovery under the rule of Moore v. Bay [284 U.S. 4, 52 S. Ct. 3 (1931)], as well as section 550, underscoring the fact that the recoveries that are property of the estate under section 541(a)(3) are peculiarly postpetition in nature. Indeed, a creditor may not sue to recover a state law fraudulent transfer once a case in bankruptcy is commenced, because this would be taking a chose in action from the estate, thereby violating the automatic stay. On the whole, therefore, the more persuasively reasoned opinions do not permit creditors to share in recoveries obtained by bankruptcy trustees or estate representatives pursuant to the avoiding powers, even where such creditors may have independent, traceable rights to those funds.

5 Collier on Bankruptcy ¶ 552.02[5][d] at 552-18 to 552-19 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev. 2007). See also, e.g., In re Southeast R.R Contractors, Inc., 235 B.R. 619, 624 (Bankr. E.D. Tenn. 1996); Lease-A-Fleet, Inc. v. University Cadillac, Inc. (In re Lease-A-Fleet, Inc.), 152 B.R. 431, 439 (Bankr. E.D. Pa. 1993).

The court agrees with the trustee and the authorities supporting his argument. The trustee's recoveries constitute postpetition property of the estate, and are not subject to the security interests of First Citizens or Chatham. This is so even if the recovered funds are traceable to prepetition collateral and the creditors would have an independent right of recovery against the avoidance defendants.

Independent of that point, with respect to claims by First Citizens and Chatham against the $900,000 Piedmont Natural Gas avoidance recovery, this matter is easily disposed of by simply referring to the tracing report. The tracing report shows that none of the funds used to make the $1,067,032 payment to Piedmont Natural Gas on December 29, 2005, are identifiable proceeds of accounts receivable.[4] Instead, the funds used to pay Piedmont were derived from a loan advance on the debtor's line of credit from First Citizens. Because the loan proceeds are not First Citizens' collateral, and the payment to Piedmont is not traceable to accounts receivable, the preference recovery would not be subject to First Citizens' or Chatham's security interest.

Similarly, with respect to the fraudulent conveyance actions, the trustee maintains that he is seeking to avoid the transfer of natural gas, not the transfer of accounts receivable. First Citizens contends that the claims are in the nature of accounts receivable, and thus the actions are really actions to recover its collateral. First Citizens does not cite to any authority that would allow the court to construe these causes of action as efforts to recover accounts receivable, and the court agrees with the trustee that these actions are an effort to recover the reasonably equivalent value of the natural gas conveyed. Indeed, all of the

---

[4] First Citizens appears to rely on the fact that the tracing report shows the funds were transferred from a First Citizens account, but it does not address the fact that the report shows the *source* of the funds was not accounts receivable. First Citizens acknowledges that it does not have a security interest in the deposit account.

16

cases cited by First Citizens in which the courts found a creditor's right to an avoidance recovery involve creditors holding security interests in the transferred <u>inventory</u> or proceeds thereof.   Here, First Citizens did not have a security interest in the natural gas inventory, but in accounts receivable.

First Citizens asserts several other bases on which it contends that it is entitled to recover the avoidance action proceeds.   At the hearing, First Citizens indicated that it was entitled to recover the proceeds of the avoidance actions against Piedmont National Gas and Triangle Energy because it had a valid, independent action pursuant to chapter 39 of the North Carolina General Statutes (the fraudulent conveyance statutes), regardless of whether the transferred funds were traceable to  its collateral.  First Citizens' brief, however, links the independent action with the tracing of the funds, and First Citizens has cited only to authorities in which the funds were traceable to identifiable collateral.   The court finds this argument unpersuasive.

First Citizens also contends that its lien on accounts receivable includes the avoidance action recoveries under the theory of quantum meruit, and is grounded in its premise that it has a claim against the adversary proceeding defendants outside of bankruptcy.   While First Citizens may have such an independent action against those defendants, that claim is different from the claim made by the trustee; and, because any proceeds of the trustee's avoidance actions are not traceable to First Citizens' collateral, whether First Citizens also has an action against those defendants outside of bankruptcy is not relevant to the court's analysis.

First Citizens and Chatham both contend that they are entitled to a constructive trust on the avoidance action recoveries based on the debtor's wrongful conversion of collateral.  As set forth above, "'[c]ourts of equity will impose a constructive trust to prevent the unjust enrichment of the holder of the legal

17

title to property acquired through a breach of duty, fraud, or other circumstances which make it inequitable

for him to retain it against the claim of the beneficiary of the constructive trust.'" <u>Sara Lee Corp. v. Carter</u>,

351 N.C. 27, 519 S.E.2d 308 (1999) (quoting <u>Cline v. Cline</u>, 297 N.C. 336, 343-44, 255 S.E.2d 399,

404 (1979)) .  Absent a breach of fiduciary duty, there must be some misconduct by a wrongdoer that

warrants a court of equity's grant of protection to the party seeking the trust.  The only allegation of

wrongdoing by First Citizens and Chatham that might warrant any equitable relief is the impermissible

transfer of their collateral.  But, the court has already observed that none of the trustee's avoidance actions

seek to recover funds that are traceable to First Citizens' or Chatham's collateral.  There is no equitable

reason to elevate the claims of First Citizens or Chatham above those of other creditors sharing in the assets

of the estate absent a direct correlation between those estate assets and their collateral.  Because there is

no direct correlation, summary judgment will be entered in favor of the trustee with respect to First Citizens'

and Chatham's claims against any avoidance action recoveries.

<u>Invista</u>

       The constructive trust analysis with respect to Invista's claim against the avoidance  recoveries  is

more complicated.  The tracing report shows that $1,961,645 of the payments made by National Gas to

BB&T on December 15 and December 19, which were recovered by the trustee in a preference action,

are traceable to Invista's prepayment.  Invista contends that it would have pursued the recovery of its

payment from BB&T on a constructive trust theory had the bankruptcy not been filed.  The trustee

disagrees, contending that any trust *res* was depleted when it was transferred to BB&T, which the trustee

characterizes as a bona fide purchaser for value without notice.  As of the petition date, the trustee

maintains, the court would not have had jurisdiction to impress a trust in favor of Invista with respect to

those funds.  When the trustee recovered the funds, he argues, he was subrogated to the interest of BB&T.

Further, the trustee contends that it would be contrary to the principles of the Bankruptcy Code to allow

the trust, once extinguished due to complete depletion, to revive and subsequently attach to the preference

recovery.

Invista disagrees that BB&T is a bona fide purchaser for value.  Invista first questions whether the

definition of "purchaser" would apply to a bank that did not acquire anything by its loan being satisfied, and

questions further whether BB&T should have known about Invista's interest or that there might be other

claims to the transferred funds.

The court agrees with the trustee that BB&T is a bona fide purchaser.  As observed by United

States District Judge Britt in I.R.S. v. Diperna, 195 B.R. 358, 361 (E.D.N.C. 1996), "[t]he Bankruptcy

Code does not define 'bona fide purchaser.'  Thus, the court will accord the term its ordinary meaning."

The court noted that "'[b]ona fide purchaser' has traditionally been defined as '[o]ne who has purchased

property for value without any notice of any defects in the title of the seller.'" Diperna, 195 B.R. at 361

(quoting *Black's Law Dictionary* 177 (6th ed. 1990)).  The more recent Eighth Edition of *Black's* further

defines bona fide purchaser as "one who has in good faith paid valuable consideration for property without

notice of prior adverse claims." *Black's Law Dictionary* 1271 (8th ed. 2004).  BB&T accepted the funds

in payment of an outstanding loan, canceled the note and its security interests, and had no notice that the

funds were derived from a prepayment by Invista for natural gas that was never delivered, and thus possibly

subject to Invista's claims against the debtor.  To the extent facts exist that may have supported the

imposition of a constructive trust in favor of Invista prior to the transfer to BB&T, they are immaterial:

19

There is no authority to revive a constructive trust that was destroyed, prepetition, by the transfer to a bona fide purchaser, in order to allow the trust to attach to a preference recovery.

And, as always, constructive trusts are impressed as a matter of equity.  In this case, the equities must be balanced against the purpose of the trustee's avoidance powers and the fact that "the Bankruptcy Code aims, in the main, to secure equal distribution among creditors."  Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co., – U.S. –, 126 S. Ct. 2105, 2109 (2006).  Imposing a constructive trust in favor of Invista against the preference recovery would elevate Invista's claim above claims of other, similarly situated creditors, which the court declines to do.  As a result, summary judgment will be entered in favor of the trustee with respect to Invista's assertion of a constructive trust on the proceeds of the trustee's avoidance actions.

## CONCLUSION

Based on the foregoing, the motion for summary judgment filed by BB&T is **ALLOWED**, provided that BB&T is to exercise its setoff consistent with marshaling instructions as set forth herein; the trustee's motion for summary judgment with respect to Invista is **DENIED** with respect to Invista's claim of a constructive trust against $238,103 in BB&T account #9153 and **ALLOWED** with respect to Invista's claim of a constructive trust against the trustee's avoidance recoveries; the trustee's motion for summary judgment is **ALLOWED** with respect to First Citizens' and Chatham's claims against the trustee's avoidance recoveries, and **DENIED** with respect to the trustee's request for marshaling of the BB&T deposit accounts in his favor; First Citizens' motion for summary judgment is **ALLOWED** with respect to its request for marshaling of the BB&T deposit accounts in its favor (except with respect to any constructive trust that may be imposed in favor of Invista) and **DENIED** with respect to its claims against the trustee's

avoidance recoveries; and the trustee's motion for summary judgment against Chatham avoiding its security

interest in the deposit accounts is **ALLOWED**.

**SO ORDERED.**

**END OF DOCUMENT**